STATE OF NORTH CAROLINA v. EMMETT W. HOSEY

No. 8517SC506

(Filed 4 February 1986)

1. **Rape and Allied Offenses § 5— second degree rape—sufficient evidence of force and lack of consent**

   The State produced substantial evidence that defendant had vaginal intercourse with his stepdaughter by force and against her will where it tended to

show that the stepdaughter was only 13 years old; defendant once told her that he had been incarcerated in a penitentiary for shooting a man and the stepdaughter was afraid of defendant; defendant pushed his stepdaughter down onto a bed, pulled her legs apart, held them apart with his knees, held her hands, and began sexual intercourse with her; the stepdaughter did not consent to defendant's actions and screamed and yelled at defendant to stop; and defendant left the room when the stepdaughter was able to lift her leg from under defendant and to kick him in the chest and stomach. N.C.G.S. 14-27.3(a)(1).

2. **Criminal Law § 102.5— improper questions by prosecutor — curative instructions — absence of prejudice**

Defendant was not prejudiced by the prosecutor's questions to defendant's wife as to whether she had attempted to gather evidence that defendant was selling dope and running with women and whether she wrote in her diary that defendant was being untrue to her where the trial court sustained defendant's objections to the questions and gave the jury curative instructions.

3. **Criminal Law § 88.1— exclusion of leading questions on cross-examination**

The trial court did not abuse its discretion in refusing to permit leading questions by defendant during cross-examination of defendant's wife.

4. **Criminal Law § 88.2— exclusion of irrelevant questions on cross-examination**

Questions which defendant asked his wife on cross-examination concerning the number of times she had talked with the district attorney's office about the case were irrelevant and properly excluded by the court.

5. **Rape and Allied Offenses § 6— absence of consent — recapitulation of evidence**

The evidence in a prosecution for rape and incest supported the trial court's instruction that evidence of the State tended to show that the victim, defendant's stepdaughter, allowed defendant to do what he did because she was afraid of him and not because she was willing to have sexual intercourse with him.

APPEAL by defendant from *Long, Judge.* Judgment entered 8 December 1984 in Superior Court, SURRY County. Heard in the Court of Appeals 24 October 1985.

Defendant was charged in proper bills of indictment with one count of rape of his stepdaughter (84CRS4223) and one count of committing incest (84CRS4222). On 4 December 1984, defendant was tried on these indictments. At the close of all the evidence defendant moved the court to dismiss the charges of incest and second-degree rape. Specifically, defendant contended that the State failed to establish that the alleged sexual intercourse was accomplished by force and against the will of Rita Willard (Rita). The court denied defendant's motion. The jury returned verdicts

upon the indictments of defendant as follows: guilty of second-degree rape, G.S. 14-273; and guilty of incest, G.S. 14-178. The court imposed upon defendant the presumptive term of twelve (12) years in prison for the conviction of second-degree rape and the presumptive term of four and one-half (4½) years in prison for incest. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Cathy J. Rosenthal, for the State.*

*Acting Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender David W. Dorey, for defendant appellant.*

JOHNSON, Judge.

[1]  Defendant assigns error to the trial court's denial of his motion to dismiss the case upon the charge of rape. Defendant contends the State did not produce substantial evidence that he had vaginal intercourse with Rita by force and against her will. When a court considers a defendant's motion to dismiss, the evidence must be considered in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn therefrom. *See State v. Easterling*, 300 N.C. 594, 268 S.E. 2d 800 (1980).

In the case *sub judice* the State's evidence consisting primarily of testimony by Rita when viewed in the light most favorable to the State tended to show the following. Defendant, Emmett Hosey, was married to Martha Hosey and is the stepfather to her three children including her daughter Rita Willard. Mrs. Hosey and her three children, including Rita, began living with defendant upon Mrs. Hosey's separation from her ex-husband Arthur Willard in 1976. Rita was approximately eight years of age at the time. On numerous occasions since Rita was about nine years old defendant would enter her bedroom at night and "feel of her." Rita testified that on these occasions she would roll over as if to awaken. On one of these occasions when defendant entered her bedroom and attempted to roll her over on her back, Rita screamed for her mother. Rita informed her mother of these incidents, but her mother never confronted defendant about the matter.

In 1981, when Mrs. Hosey was hospitalized for a serious heart condition she made arrangements for her children to live with their father Arthur Willard until she was released from the hospital. Arthur Willard was living in a trailer near the trailer in which defendant, Mrs. Hosey and her children were living before Mrs. Hosey was hospitalized. On or about 1 October 1981, Rita, then thirteen years old and temporarily living with her father Arthur Willard, was preparing for a visit with her mother in the hospital. However, the hot water heater in her father's trailer was not working properly, so Rita went to take a shower in defendant's nearby trailer. At the time, defendant was in Arthur Willard's trailer visiting. Shortly after Rita departed for defendant's trailer to take a shower defendant left Arthur Willard's trailer and returned to his trailer. Rita had just finished showering and was getting out of the shower when defendant entered the bathroom and ordered her to get up against the sink whereupon he started rubbing against her and "feeling" her. Defendant then ordered Rita to go into his bedroom and lay down on his bed. Rita complied with her stepfather's order, went into his bedroom and laid on the bed. Defendant followed her into the bedroom, disrobed, began making sexual advances to her, and repeatedly murmured "this is going to feel good." A noise startled defendant such that he raised up and ordered Rita to go into her bedroom, lay down on the bed, and for her not to come out. Rita went into her bedroom, but began drying off and getting into her underclothes. After investigating for the source of the noise defendant locked the door to the trailer, entered Rita's bedroom which did not have a door to it, pushed her down onto the bed, pulled her legs apart, held them apart with his knees, then held her hands and continued his sexual advances and began sexual intercourse with her. Rita testified that she started screaming and yelling "please, just stop" and that she was able to lift her leg from under defendant so that she could kick him in the chest and stomach. Defendant left the room but returned to tell Rita that if she told her mother he would beat her up or kill her. Defendant contends that the foregoing is not substantial evidence of defendant's vaginal intercourse with Rita accomplished by force and against her will. We disagree.

The essential elements for a conviction of second degree rape as proscribed by G.S. 14-27.3 is that the vaginal intercourse took

place "[b]y force and against the will of the other person." G.S. 14-27.3(a)(1).

The force necessary to constitute rape need not be actual physical force. *State v. Primes*, 275 N.C. 61, 165 S.E. 2d 225 (1968). "Fear, fright, or coercion may take the place of force." *Id.* at 67, 165 S.E. 2d at 229 (citing *State v. Thompson*, 227 N.C. 19, 40 S.E. 2d 620 (1946)). Rita testified that she was fearful of defendant. Mrs. Martha Hosey and Rita testified that defendant took them to a penitentiary whereupon he informed them that he had been incarcerated there for shooting a man. Testimony by Rita shows a lack of consent. When Rita was trapped alone in the bathroom with defendant, she was nude, dripping wet, and was at the mercy of an adult man whom she was fearful of. Defendant, as her stepfather, had been in a position of authority over her. In *State v. Alston*, 310 N.C. 399, 312 S.E. 2d 470 (1984), the court noted that:

> [T]he absence of an explicit threat is not determinative in considering whether there was sufficient force in whatever form to overcome the will of the victim. It is enough if the totality of the circumstances gives rise to a reasonable inference that the unspoken purpose of the threat was to force the victim to submit to unwanted sexual intercourse.

*Id.* at 409, 312 S.E. 2d at 476. Taking into consideration defendant's position of dominance and control over Rita we conclude that under the evidentiary circumstances the vaginal intercourse was against her will.

Rita testified that defendant not only pushed her onto the bed, but that he also accomplished his penetration of her through the use of force.

> Q. Now, Rita, you've also testified that he penetrated you there in the trailer on the day you testified about. How was he able to accomplish that with you laying there on the bed?
>
> A. He pulled my legs apart.
>
> Q. With his hands?
>
> A. Yes, and put his knees in-between it, and he held my arms.

We hold that considering thirteen-year-old Rita's fear of her step-father along with the testimony set forth there was sufficient evidence for the jury to find that defendant used sufficient actual force to overcome her will, and any resistance she was capable of. There is no evidence of any consent by Rita to engage in vaginal intercourse with defendant.

[2] Next, defendant contends that the following questions posed by the State to Mrs. Hosey had such a prejudicial impact with the jury that he is entitled to a new trial.

> Q. [Mrs. Hosey] I'll ask you whether or not (sic) on another occasion you and Rita didn't go up to the Truck Stop to gather evidence on Emmitt, thinking he was selling dope or running with women.
>
> Objection.
>
> [Court] Objection sustained. Members of the jury. . . .
>
> A. I've never heard of this.
>
> [Court] Just a moment. Members of the jury, you are not to consider the implications of the question.

During redirect examination of Mrs. Hosey the prosecutor asked the following:

> Q. Mrs. Hosey, I'll ask you why you entered in your diary on August the 9th, 1981, that you thought Emmitt was being untrue to you and running with women. Did Arthur tell you then?
>
> A. Yes.
>
> Mr. Royster: OBJECTION.
>
> COURT: SUSTAINED. Members of the jury, you are not to consider the implications of the question.

A prosecutor may not place before the jury by argument, insinuating questions, or other means, matters not legally admissible in evidence. *State v. Phillips*, 240 N.C. 516, 82 S.E. 2d 762 (1954). In the case *sub judice* the trial judge correctly recognized this possible prejudice to defendant and correctly sustained defendant's objection to the questions posed and issued curative instructions to the jury. As a result of defendant's objections and

the court's rulings on those objections we find nothing in the record to indicate the jury disregarded the court's timely instructions. Defendant's right to a fair trial was not prejudiced by questions posed by the State. This assignment of error is overruled.

[3] The next assignment of error brought forward by defendant's appeal is that his right to present a full defense was denied when the court sustained the State's objection to defendant's use of leading questions during cross-examination of Mrs. Hosey. We disagree.

The law of this State is that it is within the sound discretion of the trial judge to determine whether the use of leading questions will be permitted and absent an abuse of such discretion the ruling by the trial judge will not be disturbed on appeal. *State v. Greene,* 285 N.C. 482, 492, 206 S.E. 2d 229, 235 (1974). The State did not tender Martha Hosey as a hostile witness. However, testimony by Mrs. Hosey undermined testimony elicited by the State from her daughter, Rita Willard. Mrs. Hosey testified to the effect that Rita Willard, the prosecuting witness, was untruthful. Timely objections by the State to defendant's use of leading questions put the matter within the judge's discretion. "The rule prohibiting leading questions is not based on a technical distinction between direct examination or cross-examination, but on the alleged friendliness existing between counsel and his witness." *Greene* at 492, 206 S.E. 2d at 235. Through the use of leading questions a proponent could easily suggest the desired reply from the eager witness. We cannot say that the trial court abused its discretion by not allowing the use of leading questions by defendant during cross-examination of defendant's wife.

[4] Defendant further argues that his right to a fair trial was denied when the trial court sustained objections by the State to questions posed by defendant on cross-examination. The basis for the trial court sustaining the State's objection was that the questions were not relevant to the issues before the jury.

Defendant's right to cross-examine the State's witnesses is a necessary element of his right to fully defend himself against charges brought against him. *See State v. Thomas,* 294 N.C. 105, 240 S.E. 2d 426 (1978). The scope of the cross-examination is limited to only those matters that are relevant to issues before

the jury. Rule 611(b), N.C. Rules Evid. The questions defendant sought to ask of Mrs. Hosey were as follows:

> Q. Let me ask you this Mrs. Hosey. Did I call you up and ask you to come down and talk with the District Attorney about this case?
>
> A. Yes, you did.
>
> Q. Give him the names of a lot of these folks that have been subpoenaed here in this very case today?
>
> A. I sure did.
>
> Mr. Bowman: OBJECTION, Your Honor. Trial strategy is not relevant.
>
> Court: SUSTAINED to the subject matter.
>
> Q. How many times have you been down there to the District Attorney's office and talked to them about this case?
>
> Mr. Bowman: OBJECTION.
>
> A. Twice.
>
> Court: Just a moment. I fail to see the relevance of that.
>
> Mr. Royster: Judge I think it's relevant to show the lady co-operated with the State.
>
> Court: Would you approach the bench?
>
> (Conference held at bench out of the hearing of the court reporter and members of the jury)
>
> Court: SUSTAINED.

Defendant was given an opportunity to explain to the court any relevance of the proposed line of questioning to the case. The court did not find defendant's arguments persuasive and in its discretion sustained the State's objections. We fail to see the relevancy to which defendant attaches to that line of questioning. The trial court did not abuse its discretion in sustaining the State's objection.

Defendant further contends that during another line of questioning of Mrs. Hosey the trial court abused its discretion by not

fully allowing defendant an opportunity to fully cross-examine her.

Q. All right, now, how old was Rita when Emmitt brought this trailer down from Riner, Virginia?

A. She would have been twelve.

Q. Did you hear her testify earlier that she was assaulted when she was nine years old in that trailer by this defendant?

A. Yes.

Mr. Bowman: OBJECTION to comparison testimony.

Court: Sustained.

Q. She was twelve years old at that time.

Mr. Bowman: OBJECTION.

Court: SUSTAINED to the form of the question.

Q. How old was Rita when you all lived in this trailer that Emmitt had brought down from Riner, Virginia, when you first moved into it?

A. She was twelve when we first moved into it.

As it appears from the testimony despite the objection by the State to the initial question about Rita's testimony defendant was allowed to establish that Rita was twelve (12) years old when she moved into the trailer Emmett brought from Virginia. Defendant's right to a fair trial was not prejudiced by the trial judge's proper exercise of his discretion to keep the trial on the issues before the jury.

[5] Defendant's final Assignment of Error is that the trial court committed error in its charge to the jury. A trial court is prohibited from expressing an opinion upon the weight and credibility of the evidence during trial or during the course of its instructions to the jury. G.S. 15A-1232. Moreover, a trial court should state the facts to the jury and avoid drawing conclusions for members of the jury. *State v. Washington*, 57 N.C. App. 309, 291 S.E. 2d 270, *disc. rev. denied*, 306 N.C. 563, 294 S.E. 2d 228 (1982). It was incumbent upon defendant to contemporaneously ob-

ject to any misstatement by the court of his contentions. *See State v. Silhan*, 302 N.C. 223, 275 S.E. 2d 450 (1981). "No party may assign as error any portion of the jury charge or omission therefrom unless he objects thereto. . . ." Rule 10(b)(2), N.C. Rules App. P. Although defendant failed to preserve any exception to the jury charge we review his assignment of error pursuant to Rule 2, N.C. Rules App. P. The portion of the jury instruction defendant excepts to is as follows:

> Other evidence of the State tends to show that Rita allowed the defendant to do what he did because she was afraid of him and not because she was willing to have sexual intercourse with him.

Rita testified that she was afraid of defendant who was her stepfather, that defendant once told her that he was once incarcerated in a penitentiary for shooting a man. The State's evidence further tended to show that Rita, thirteen years of age, was alone in a confined area with defendant who used physical force by pushing her down onto the bed, pulling her legs apart, holding them apart with his knees, and then holding her hands. After reviewing the Record on Appeal, as a whole, we find that the trial judge correctly instructed the jury. Defendant has received a trial free from prejudicial error.

No error.

Judges WEBB and PHILLIPS concur.